KATHRYN KENEALLY
Assistant Attorney General

W. CARL HANKLA
Trial Attorney
U.S. Department of Justice, Tax Division
P.O. Box 683
Washington, DC 20044
Telephone (202) 307-6448
w.carl.hankla@usdoj.gov
*Attorneys for Defendant*

MICHAEL C. ORMSBY
United States Attorney
*Of Counsel*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>                         Plaintiff,<br><br>    v.<br><br>KING MOUNTAIN TOBACCO CO., INC.,<br><br>                         Defendant. | Civil No. CV-12-3089-RMP<br><br>**UNITED STATES' REPLY TO DEFENDANT'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**<br><br>**With Oral Argument December 4, 2013 9:00 a.m., Yakima** |

U.S.' REPLY RE MOTION FOR
SUMMARY JUDGMENT
        - 1

# Introduction

The United States, plaintiff, contends that King Mountain Tobacco Co., Inc. ("King Mountain"), defendant, is liable as a matter of law for federal tobacco manufacturers' excise taxes on its cigarettes and roll-your-own tobacco. King Mountain contends that it is exempt under the Treaty of 1855 (the "Treaty") and the General Allotment Act. Pursuant to the Court's order at ECF No. 53, the United States' motion for summary judgment was converted to one for partial summary judgment and limited to issues relevant to whether King Mountain is liable for the tax; the issue of the exact amount due has been stayed.

King Mountain's opposition ("Opposition") makes arguments that are contrary to Ninth Circuit law and inconsistent with conclusions the Court has already reached in this litigation (including Case No. 11-CV-3038). King Mountain's arguments are untenable. And no trial is necessary. The Court should follow clear Ninth Circuit precedent and, in line with the Court's previous rulings, grant the United States' motion and enter partial summary judgment against King Mountain, determining that it is liable for the taxes at issue in an amount to be determined.

///

///

U.S.' REPLY RE MOTION FOR
SUMMARY JUDGMENT
- 2

10792557.1

# Issues Presented

**I.**   **Whether, in the Ninth Circuit, a party seeking an exemption from federal tax under a treaty must point to "express exemptive language" in the text.**

**II.**   **Whether in the absence of "express exemptive language," extrinsic evidence is not admissible to construe the Treaty.**

**III.**   **Whether policy considerations can substitute for "express exemptive language."**

**IV.**   **Whether the limited tax exemption in the General Allotment Act applies only to "incompetent" individual tribal members and only as to products that derive "directly" from their allotted trust land.**

# Argument

**1.   In the Ninth Circuit, a party seeking an exemption from federal tax under a treaty must point to "express exemptive language" in the text.**

King Mountain claims an exemption from federal tax under the Treaty. The controlling Ninth Circuit law is represented by <u>Ramsey v. United States</u>, 302 F.3d 1074 (9th Cir. 2002). The analysis under <u>Ramsey</u> is straightforward. The trial court must first look at the Treaty itself to see if it contains "express exemptive language." The Court relied on <u>Ramsey</u> in its Order Denying Plaintiff's Motion for Partial Summary Judgment (ECF No. 103, p. 13):

> [W]here federal tax law is at issue, a court must first determine whether the treaty contains "express exemptive language." *Id.* at 1078. Only if the treaty contains express exemptive language does the court proceed to determine whether

U.S.' REPLY RE MOTION FOR
SUMMARY JUDGMENT
- 3

10792557.1

that language could be reasonably construed to support exemption from taxation. *Id.* at 1079. The question before this Court, then, is whether [the Treaty] contains express exemptive language.

Thus if no express exemptive language can be found in the text, the analysis is over. The claim of exemption fails. That is the case here, as argued in the United States' Motion at pages 11-17 thereof, ECF No. 48.

In the Third and Eighth Circuits, the threshold is lower than in this Circuit: the claimant must point to language within a treaty that reasonably can be construed to support an exemption. S*ee* Lazore v. Commissioner, 11 F.3d 1180, 1185 (3rd Cir. 1993); Holt v. Commissioner, 364 F.2d 38, 40 (8th Cir. 1966). The United States acknowledges this difference in its Motion and argues that the result would be the same under the lower threshold. ECF No. 48, p. 17. The question is academic, however, because the Court is required to follow Ninth Circuit precedent.

Whether the Treaty contains express exemptive language is an issue of law for the Court to decide. It is an appropriate issue for summary judgment. King Mountain argues that the Treaty contains express exemptive language in Article II and Article III. It does not, as the Court has already concluded as to Article II (ECF No. 103 (Case No. 11-CV-3038), p. 11-14) and as the Ninth Circuit has already concluded as to Article III in Ramsey.

U.S.' REPLY RE MOTION FOR
SUMMARY JUDGMENT
- 4

1
2

**2.    In the absence of "express exemptive language," extrinsic evidence is not admissible.**

3

King Mountain argues that the Treaty must be interpreted in accordance

4
5

with the Indian canons of construction, based on what the Yakamas understood

6

the Treaty to mean in 1855, citing cases such as <u>Cree v. Waterbury</u>, 78 F.3d

7

1400 (9th Cir. 1996) and <u>United States v. Smiskin</u>, 487 F.3d 1260 (9th Cir. 2007).

8
9

It offers evidence of the Yakamas' understanding. King Mountain is wrong on

10

the law, and its evidence does not change things.

11

King Mountain's argument disregards the body of Ninth Circuit law

12
13

represented by <u>Ramsey</u>, and it also disregards the Court's own prior conclusions

14

in Case No. 11-CV-3038, which the Court has stated are "relevant" to the issues

15

in this case (*see* ECF No. 121, p. 2, Case No. 11-CV-3038). The Indian canons

16
17

cannot apply, and extrinsic evidence cannot be admitted, unless the text of the

18

Treaty contains express exemptive language. <u>Ramsey</u> does not support the

19

application of a more liberal standard for construing treaties than statutes, as

20

King Mountain implies on page 16 of its Opposition (ECF No. 54). <u>Ramsey</u>

21
22

stands for the rule that treaties must contain express exemptive language in order

23

to support an exemption from federal tax. The <u>Ramsey</u> court was not swayed by

24

dicta in <u>Chickasaw Nation v. United States</u>, 534 U.S. 84 (2001) to adopt a more

25
26

liberal standard: "We are not persuaded that the Supreme Court's recent

U.S.' REPLY RE MOTION FOR
SUMMARY JUDGMENT
- 5

reference in <u>Chickasaw Nation v. United States</u> [citation omitted] to potential differences between the application of the Indian-friendly canons to congressional statutes and to Indian treaties has changed our long standing precedent in the treaty context which has already resolved any conflicts between those canons and the express exemption requirement." 302 F.3d at 1070-80.

Since the Treaty contains no express exemptive language, the Indian canons of construction cannot apply, and the evidence that King Mountain offers extrinsic to the Treaty is not admissible. No trial is needed.

### 3. Policy considerations cannot substitute for "express exemptive language."

To compensate for the absence of express exemptive language in the Treaty, King Mountain urges at pages 18 and 19 of its Opposition that the Court should find a tax exemption by construing the Treaty as a whole in light of policies or goals it may represent. But the Ninth Circuit has already rejected this approach. <u>Karmun v. Commissioner</u>, 749 F.2d 567 (9th Cir. 1984) presented a claim by Alaska natives to an exemption from federal income tax implied from the Reindeer Act. Even though the taxpayers could not point to express exemptive language in the Act, they argued that the Act read as a whole created an exemption. The court disagreed and affirmed the Tax Court's decision for the Commissioner:

U.S.' REPLY RE MOTION FOR
SUMMARY JUDGMENT
- 6

10792557.1

No clear expression of intent to exempt appears in the Reindeer Act.  Appellants argue, nevertheless, that the Act taken as a whole suggests that Congress intended an exception.  . . .  They read <u>Stevens</u> [v. Commissioner, 452 F.2d 741 (9th Cir. 1971)] to say that this court will imply an exemption, absent express exemptive language, on the basis of the purposes and policies of a statute.  Appellants misread <u>Stevens</u>.  . . . <u>Stevens</u> does not, as appellants contend, stand for the proposition that an exemption will be implied absent express exemptive language.

The evidence that King Mountain offers about the purposes and policies of the Treaty is therefore not relevant. "[C]ourts themselves are [not] free to create favorable rules." <u>Fry v. United States</u>, 557 F.2d 646, 649 (9th Cir. 1977). "The Tribe must address its prayer for relief to Congress, not the courts."[1]

<u>Confederated Tribes of Warm Springs v. Kurtz</u>, 691 F.2d 878, 883 (9th Cir. 1982).

### 4.   The limited tax exemption in the General Allotment Act applies only to "incompetent" individual tribal members and only as to products that are "directly" derived from their allotted trust land.

The General Allotment Act protects incompetent tribal members pending the time of their emancipation. *See* <u>Squire v. Capoeman</u>, 351 U.S. 1, 10 (1956).

---

[1] Appealing to the President through a claimed right of consultation is not an appropriate alternative to petitioning Congress for statutory relief. The Yakama Nation is not entitled to a meeting with the President in any event, as explained in the United States' Motion. ECF No. 48, p. 17-20.

U.S.' REPLY RE MOTION FOR
SUMMARY JUDGMENT
- 7

The land at issue here is allotted to and held in trust for Delbert Wheeler, a member of the Yakama Nation who is incompetent within the meaning of Capoeman. The taxpayer is King Mountain, a separate, corporate legal entity. Therefore, King Mountain cannot be entitled to an exemption from tax under the Act, as the Court has already concluded. ECF No. 103 (Case No. 11-CV-3038) at p. 10-11.

Applying the tobacco excise tax to King Mountain will not "be a judicial denial of access to the most important business tool available to achieve economic self-sufficiency" (incorporation), as King Mountain claims on page 9 of the Opposition. Holding King Mountain liable for the tax will not put it out of business. Nor will the Yakama people be "relegated . . . to [being] no more than common laborers without the right to rework tribal resources as part of a manufacturing process," as King Mountain argues at page 20 of the Opposition. King Mountain's profits would be reduced, but that is not prohibited by the Act. *Cf.* Karmun, 749 F.2d at 570 (the purpose of the Reindeer Act, which was to encourage the development of a native-operated reindeer industry, was "not undermined by requiring the owners and operators of the reindeer herds to pay federal income taxes on their profits from the successful conduct of such operations").

U.S.' REPLY RE MOTION FOR
SUMMARY JUDGMENT
- 8

Aside from the separate-legal-entity issue, King Mountain cannot be entitled to any exemption under the Act because its cigarettes and other tobacco products do not come "directly" from Mr. Wheeler's land as required by the Act and Capoeman. As the Court said, those products are a step removed from the land—they are derived from a product derived from the land. ECF No. 103 (Case No. 11-CV-3038), p. 9. United States v. Hallam, 304 F.3d 620, 621 (10th Cir. 1962) does not extend Capoeman to products manufactured from resources taken from allotted land as King Mountain argues on page 12 of the Opposition. Hallam held that "chats"—mining waste byproducts—were nontaxable just as the minerals themselves were. Cigarettes and roll-your-own tobacco are not chats.

The Court concluded that King Mountain's products are the result of "reinvestment income." ECF No. 103 (Case No. 11-CV-3038), p. 8-9. Thus they do not come directly from the land. *See also* Order Re Motions for Summary Judgment, ECF Doc. 159, p. 16, King Mountain Tobacco Co., Inc. and the Confederated Tribes and Bands of the Yakama Nation v. Robert McKenna, Attorney General of the State of Washington, No. CV-11-3018-LRS (E.D. Wash. April 5, 2013) ("the finished cigarettes and roll-your-own tobacco are not directly derived from trust land").

U.S.' REPLY RE MOTION FOR
SUMMARY JUDGMENT
- 9

King Mountain has submitted evidence that the percentage of trust-grown tobacco in its products has been increasing, and that in the fourth quarter of this year, 55 percent of its tobacco came from trust land. It then argues that even if all of its products are not exempt, then a portion could be exempt from tax under <u>Capoeman</u>. This apportionment theory, unsupported by statute or case law, does not require a trial. The percentage of trust-grown tobacco in the finished products is not material because King Mountain's products would not be "directly" from the land even if 100 percent of the tobacco was trust-grown. *See* U.S.' Motion, ECF No. 48, p. 7.

## Conclusion

This case turns on legal issues. No trial is necessary. Based on the foregoing and on the United States' Motion, there is no genuine issue of material fact and the United States is entitled as a matter of law to summary judgment as to King Mountain's liability for the subject taxes, with the amount due to be determined.

///

///

///

U.S.' REPLY RE MOTION FOR
SUMMARY JUDGMENT
- 10

10792557.1

DATED this 25th day of November, 2013.

KATHRYN KENEALLY
Assistant Attorney General

*/s/ W. Carl Hankla*
W. CARL HANKLA
Trial Attorney
U.S. Department of Justice, Tax Division
P.O. Box 683
Washington, DC 20044
Telephone (202) 307-6448
w.carl.hankla@usdoj.gov
*Attorneys for Defendant*

MICHAEL C. ORMSBY
United States Attorney
*Of Counsel*

U.S.' REPLY RE MOTION FOR
SUMMARY JUDGMENT
- 11

10792557.1

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of November, 2013, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to the following:

JOHN ADAMS MOORE, JR.
Adam Moore Law Firm
217 N. Second St.
Yakima, WA  98901
mooreadamlawoffice@qwestoffice.net

RANDOLPH H. BARNHOUSE
Luebben Johnson & Barnhouse LLP
7424 4th Street NW
Los Ranchos de Albuquerque, NM 87107
Telephone (505) 842-6123
dbarnhouse@luebbenlaw.com

*/s/ W. Carl Hankla*
W. CARL HANKLA
Trial Attorney
U.S. Department of Justice

U.S.' REPLY RE MOTION FOR
SUMMARY JUDGMENT
- 12

10792557.1