KATHRYN KENEALLY
Assistant Attorney General

W. CARL HANKLA
Trial Attorney
U.S. Department of Justice, Tax Division
P.O. Box 683
Washington, D.C. 20044-0683
Telephone: (202) 307-6448
w.carl.hankla@usdoj.gov
*Attorneys for Plaintiff*

MICHAEL C. ORMSBY
United States Attorney
*Of Counsel*

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,

Plaintiff,

v.

KING MOUNTAIN TOBACCO CO., INC.,

Defendant.

Case No. CV-12-3089-RMP

**DECLARATION OF TONYA GEIS**

I, TONYA GEIS, declare as follows:

1. My name is Tonya Geis. I am over 21 years old and I am competent to testify about the matters set forth herein.

2. I, Tonya Geis, certify that I am the Section Chief, Delinquent Tax, at the National Revenue Center ("NRC") of the Alcohol and Tobacco Tax and Trade Bureau ("TTB"), United States Department of the Treasury, Cincinnati, Ohio. In my official capacity, I have immediate access to the records of TTB for all persons who

file a Federal Excise Tax Return, Form 5000.24, under the Internal Revenue Code as a Manufacturer of Tobacco Products.

3. I am familiar with this record-keeping system and have access to TTB's tobacco excise tax records as needed to perform my official duties.

4. I am also familiar with the history of the Notices and Demands for Taxes Due issued by TTB to King Mountain Tobacco Company, Inc. ("King Mountain"), having reviewed them when the notices were prepared by the NRC's Delinquent Tax Section.

5. I certify that TTB's excise tax records for King Mountain, a manufacturer of tobacco products located at 2000 Fort Simcoe Road, White Swan, Washington 98952, show that King Mountain has assessed, but unpaid tax liability.

6. The Corrected Notice & Demand of Taxes Due/Notice of Intent to Levy dated June 11, 2013 ("Corrected Notice"), consisting of four pages and attached hereto as Exhibit A, is a true copy of the document sent to King Mountain on or about that date.

7. Transmitted along with this declaration are detailed copies of the computations done in connection with this corrected notice [in three binders].

8. The attached documents and computations are true copies used and prepared by TTB in calculating the liability stated in the Corrected Notice, and are

standard documents created when an assessment for unpaid liability is issued by TTB.

**Authority Pertaining to Revenue and Collection Activity**

9. Among other things, TTB collects Federal excise taxes on tobacco products. It enforces Chapter 52 and Chapters 63 through 68 of the Internal Revenue Code of 1986 pertaining to assessment and collection of tax, penalties, and interest, in order to ensure proper federal tax payment on tobacco products removed from bond.

10. Section 1111(d) of the Homeland Security Act of 2002 (Act) established the Tax and Trade Bureau within the Department of the Treasury (Treasury). Treasury Order No. 120–1 (Revised), dated January 24, 2003, designated the Tax and Trade Bureau as the Alcohol and Tobacco Tax and Trade Bureau (TTB). TTB retained authority over "the authorities, functions, personnel, and assets of the Bureau of Alcohol, Tobacco and Firearms relating to the administration and enforcement of Chapters 51 and 52 of the Internal Revenue Code of 1986, Sections 4181 and 4182 of the Internal Revenue Code of 1986, and Title 27, United States Code." Section 1111(c)(2) of the Act.

**Process for Issuing Notice & Demand Letters**

11. TTB has a centralized electronic record-keeping system of tax data, including return information, assessments, payments and credits, debits, unpaid balances, notices and demands, and other account activity. Data is entered into this system at or near the time of the relevant account activity, either automatically or by persons at the NRC with knowledge of that activity. This system is maintained in the regular course of TTB's business and it is a regular practice of TTB to maintain this system.

12. When preparing and issuing any notices of proposed assessment or demand for taxes due and calculating any applicable penalties and interest, TTB utilizes TaxInterest software. TaxInterest is a software program database created by Time Value software. This software program calculates interest and penalties on federal excise tax owed on TTB-regulated commodities.

13. When preparing a notice and demand, a TTB specialist in the Delinquent Tax Unit manually enters the principal amount, the due date for the principal, the date that the principal was paid or unpaid, the date that the excise tax return was filed, and the amount of any partial payment made on past due principal into the TaxInterest program. Information from the excise tax return and mailing

envelope, if any, including the date the return and/or payment was received is retained in TTB's centralized electronic record keeping system.

**Determination of Underpaid Principal**

14. In determining the underpaid principal of a regulated industry member, TTB reviews all available evidence of taxable removals.

15. In order to determine underpaid principal for King Mountain, the Delinquent Tax unit compared federal excise tax returns filed under penalty of perjury by King Mountain with payments made for the same periods.

16. For example, for the tax period ending March 31, 2013, King Mountain filed an excise tax return on April 15, 2013, reporting a liability of $3,438,406.39. No payment was made by King Mountain. The Corrected Notice included this liability.

17. The Delinquent Tax Unit also reviewed a report by TTB's Tax Audit Division (TAD) recommending assessment of additional principal for two periods in 2010 where evidence showed King Mountain's taxable removals exceeded the amounts reported on its federal excise tax returns. This additional liability was assessed for the periods ending May 31, 2010, and June 30, 2010. The Delinquent Tax United assessed this additional principal based on the TAD report.

**Interest Calculation**

18. When determining the applicable interest rate, TTB refers to Subtitle F, Chapter 66 of the IRC. The TaxInterest program applies the appropriate interest rate, after the underpaid principal liability amount is manually entered into the program.

19. Interest is calculated in accordance with section 6601 of the IRC, which provides that if any amount of tax imposed under the IRC is not paid on or before the last date prescribed for payment, interest shall be paid on the amount of unpaid tax at the underpayment rate established under section 6621 of the IRC. Interest shall be paid for the period from such last date to the date paid. Interest is compounded daily, without any limit or cap, as per section 6622 of the IRC.

20. The applicable interest rate is established by section 6621 of the IRC. When the interest rate is changed by the Federal Reserve Board, TTB's IT department updates TaxInterest with the current interest rate, and interest is automatically calculated by TaxInterest on any unpaid tax noted in the notice and demand, using the applicable interest rate.

21. Section 6621(c) of the IRC also allows for an increase in the underpayment interest rate for large corporate underpayments. If the underpayment is over $100,000, the IRC allows for setting of the underpayment interest rate as the sum of the Federal short-term rate determined by the Secretary of the Treasury, plus

five (as opposed to three) percentage points. The increased rate for large corporate underpayments is only applied to an underpayment on the thirtieth day after the first letter notifying the taxpayer of the assessment or proposed assessment. *See* 26 U.S.C. § 6621(c)(2)((B)(i).

22. The TaxInterest program prompts the specialist to apply the large corporate rate for an eligible underpayment, based upon the amount of the underpayment and the date which the eligible underpayment was included in the first notice and demand.

23. For example, for the tax period ending December 31, 2009, King Mountain filed an excise tax return on January 14, 2010, reporting a liability of $3,863,221.60. No payment was made by King Mountain. The Corrected Notice included this liability. The calculations from the TaxInterest program for this period reflect that the underpaid liability was first billed on February 8, 2010, and the large corporate underpayment rate was effective on March 30, 2010, and continues to apply until the full amount of the unpaid liability is paid in full.

**Penalty Calculations**

24. Three penalty provisions were applied to the unpaid tax liability of King Mountain. The penalties were failure to file, failure to pay, and failure to deposit.

25. Section 6651(a)(1) of the IRC imposes a penalty for failure to file a tax return by the date prescribed unless it is shown that the failure is due to reasonable cause and not due to willful neglect. The penalty period extends from the prescribed due date to the date on which TTB receives the return from the taxpayer. The amount of this penalty is 5 percent if the period of delinquency is not more than 1 month, with an additional 5 percent for each additional month or fraction of a month during which the delinquency continues. The failure to file penalty may not exceed 25 percent in the aggregate.

26. Section 6651(a)(2) of the IRC imposes the failure to pay penalty if the tax on any tax return executed by the taxpayer is not paid by the due date of that return. The failure to pay penalty applies when a taxpayer acknowledges the amount shown on the tax return was due as tax, and fails to timely pay the tax shown on that return. The failure to pay penalty may be applied whether the tax return is filed on a timely basis or filed late. The period for computing this penalty is from the due date of the return until the tax is full paid. The penalty rate is one-half of 1 percent per month based on the amount of tax shown on the return but not paid. The penalty is compounded by month, not to exceed 25 percent.

27. Pursuant to the special rule noted in section 6651(c)(1), if failure to file and failure to pay penalties both apply to an underpaid liability, the failure to file

penalty will be reduced by the amount of the failure to pay penalty for the prescribed tax period, and for each month thereafter, where both the failure to file and failure to pay penalties apply.

28. For example, the Corrected Notice reflects that King Mountain was assessed a failure to file penalty in the amount of $13,816.93 for tax period ending September 26, 2011. This return was due on September 29, 2011 and filed on October 3, 2011 via TTB's Pay.gov electronic system, 4 days late. The TaxInterest program automatically calculated the failure to file penalty at 4.5 percent rate, as opposed to 5 percent, since that tax period also contained failure to pay penalty. King Mountain was assessed a failure to pay penalty of $56,802.93, as of June 11, 2013. Because this amount has not reached the statutory maximum of 25%, that penalty will continue to accrue until the liability is paid or the statutory maximum is reached. The tax period ending September 26, 2011 was the only period for which both failure to file and failure to pay penalties were assessed against King Mountain.

29. Section 6656 of the IRC imposes a failure to deposit penalty where there has been a failure to deposit the full amount due with an authorized depository on or before the dates prescribed. The failure to deposit penalty is based on the amount which was required to be deposited but was not deposited. This penalty is computed based on the number of days that the deposit is late.

30. Failure to timely pay excise tax by electronic fund transfer (EFT) when required to do so subjects a tobacco manufacturer to a "failure to deposit" penalty ranging from two to ten percent of the underpayment of the principal. 26 U.S.C. § 6656.

31. A tobacco manufacturer whose gross tobacco excise tax liability equals or exceeds $5 million in a 12 month period is required to pay its excise taxes by EFT for the succeeding calendar year.

32. The failure to deposit penalty is a three-tiered penalty rate, as per the IRC. The applicable penalty rate to be charged depends on how late the deposit was paid. The penalty is as follows:

| Number of Days Deposit is Late | Amount of Penalty |
|---|---|
| 1 – 5 | 2% |
| 6 – 15 | 5% |
| 16 or more | 10% |

33. Using the same example of the period ending September 26, 2011, the specialist entered the failure to deposit penalty into the TaxInterest program at 10% of the amount that was not paid by EFT, or $30,704.27.

34. In the course of preparing this declaration, and in coordination with the Director, TAD, we became aware that the Corrected Notice did not give King Mountain the full benefit of the doubt with respect to the removals it had reported on its excise tax returns for the periods ending May 15, 2010 and June 15, 2010. As such, we corrected those two periods in the Second Corrected Final Notice & Demand of Taxes Due and Intent to Levy, dated February 25, 2014 and attached hereto as Exhibit B ("Second Corrected Notice"). The basis for this correction is explained in more detail in the Declaration of Allen Leftwich. Because only those two periods were affected, we recomputed the tax, penalty and interest liability for those periods through June 11, 2013, the date of the Corrected Notice. Because the additional tax amounts for May and June 2010 had not been previously assessed, the failure to pay penalty did not start to accrue until after the assessment in June 2013. As such, we abated those penalties. When the assessment is updated to reflect current liability, the failure to pay penalty will be assessed on these periods from June 11, 2013, the date of the Corrected Notice, forward.

35. While we were preparing the Second Corrected Notice, we also noticed that payment for prepayment returns filed during the period ending April 15, 2011 was made on May 24, 2011. The Second Corrected Notice reflects the additional penalties, failure to file and failure to deposit, and interest for that period. The

additional assessed penalties and interest for that period total $57,567.35, as reflected on the Second Corrected Notice.

In accordance with 28 U.S.C. § 1746, I declare that the foregoing is true and correct.

Executed on February 25, 2014.

Tonya Geis