KATHRYN KENEALLY
Assistant Attorney General

W. CARL HANKLA
Trial Attorney
U.S. Department of Justice, Tax Division
P.O. Box 683
Washington, D.C. 20044-0683
Telephone: (202) 307-6448
w.carl.hankla@usdoj.gov
*Attorneys for Plaintiff*

MICHAEL C. ORMSBY
United States Attorney
*Of Counsel*

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> KING MOUNTAIN TOBACCO CO., INC., <br><br> Defendant. | Case No. CV-12-3089-RMP <br><br> **DECLARATION OF ALLEN LEFTWICH** |

I, ALLEN LEFTWICH, declare as follows:

1. My name is Allen Leftwich. I am over 21 years old and I am competent to testify about the matters set forth herein.

2. I am currently employed by the Alcohol and Tobacco Tax and Trade Bureau (hereafter, "TTB") as the Director, Tax Audit Division (hereafter, "TAD").

*DECLARATION OF ALLEN LEFTWICH*

- 1 -

Immediately prior to my appointment as Director, I served as Deputy Director, TAD. I have been employed by TTB since July 2003.

3.  As director of TAD, I am responsible for the planning, development and monitoring of TTB's excise tax audit program for TTB's regulated industries. I have a Deputy Director, six Supervisory Audit Managers, a Special Operations Program Manager and more than 65 excise-tax auditors that report to me.

4.  I am generally familiar with the Federal excise tax payment requirements for tobacco manufacturers in the United States. I am also familiar with TTB's record-keeping system and have access to tobacco excise tax records as needed to perform my official duties.

5.  In connection with my official duties as Deputy Director and, now, Director, TAD, I reviewed the affidavit (hereafter, "Bullwinkel Affidavit") prepared by Special Agent Matthew Bullwinkel, Federal Bureau of Investigations, in support of the search and seizure warrant executed at the premises of King Mountain Tobacco Company, Inc. (hereafter, "King Mountain") on February 16, 2011. Attached to this declaration as Exhibit A is a true and correct copy of the Bullwinkel Affidavit.

6.  King Mountain currently holds a permit as a manufacturer of tobacco products. According to TTB's records, with which I am personally familiar, TTB

*DECLARATION OF ALLEN LEFTWICH*

approved King Mountain's application and issued the tobacco manufacturer's permit in 2007.

7. The Bullwinkel Affidavit describes a transaction between King Mountain and FB Enterprises involving the sale of 22 tractor trailer loads of cigarettes.

8. Under my supervision, TTB's TAD compared those transactions to the Federal Excise tax returns filed by King Mountain and found that King Mountain had underpaid its Federal excise tax in May and June 2010 by nearly $9 million.

9. According to the Bullwinkel Affidavit, a South Carolina wholesaler purchased 22 truckloads of King Mountain brand cigarettes each carrying 49,920 cartons between May 2010 and July 1, 2010.  This totaled to 149,760 cartons purchased in May 2010 and then 948,480 purchased in June 2010. Bullwinkel Affidavit at 67-70. The number of cartons purchased in May and June 2010 was equivalent to 29,952,000 and 189,696,000 cigarettes respectively (219,648,000 cigarettes total).

10. TAD reviewed King Mountain's Federal Excise tax returns and monthly reports for May and June 2010 to determine whether the sales to the South Carolina wholesaler were reported and tax-paid. Attached as Exhibit B are true and correct copies of King Mountain's Federal excise tax returns, TTB Form 5000.24, for May

*DECLARATION OF ALLEN LEFTWICH*

and June 2010. Attached as Exhibit C are true and correct copies of King Mountain's monthly reports, TTB Form 5210.5, for May and June 2010.

11.    For May 2010, King Mountain reported removal of 18,061,000 cigarettes. For June 2010, King Mountain reported removal of 22,861,200 cigarettes. These reported removal amounts are intended to represent aggregate monthly cigarette removals.  Total removals reported by King Mountain for May and June 2010 did not equal or exceed the sales to the South Carolina Wholesaler as would be expected. The following chart compares the reported removals with the sales to the South Carolina Wholesaler:

|  | **May 2010 (cigarettes)** | **June 2010 (cigarettes)** | **Total** |
|---|---|---|---|
| **King Mountain Report** | 18,061,000 | 22,861,200 | 40,922,200 |
| **S.C. Wholesaler Purchases** | 29,952,000 | 189,696,000 | 219,648,000 |
| **Unreported sales** | (11,891,000) | (166,834,800) | (178,725,800) |

12.    Even assuming that all of the reported removals were included in King Mountain's sales to the South Carolina wholesaler, King Mountain underreported its cigarette removals by over 175 million cigarettes during that two month period.

13.    Section 5701(b)(1) of the Internal Revenue Code imposes a tax on small cigarettes of $50.33 per thousand cigarettes or $0.05033 per cigarette. Small

*DECLARATION OF ALLEN LEFTWICH*

cigarettes are cigarettes weighing not more than three pounds per thousand. This small cigarette tax rate has been in effect since April 1, 2009.

14. At my direction, TAD calculated the amount of additional federal excise tax due on the cigarettes sold to the South Carolina wholesaler. Assuming King Mountain sold all of its reported May and June 2010 small cigarette removals to the South Carolina Wholesaler, the most favorable assumption for King Mountain, King Mountain underpaid its Federal excise tax liability for those periods by nearly $9 million. The following chart outlines the liability:

|  | **May 2010** | **June 2010** | **Total** |
|---|---|---|---|
| **Excise Tax Reported on King Mountain Returns (cigarettes)** | $909,010.13 | $1,150,604.19 | $2,059,614.32 |
| **Tax Due Based on Wholesaler Purchases (cigarettes)** | $1,507,484.16 | $9,547,399.68 | $11,054,883.84 |
| **Additional Tax Due** | **($598,474.03)** | **($8,396,795.49)** | **($8,995,269.52)** |

15. If the reported removals for May and June 2010 constituted sales to customers other than the South Carolina wholesaler, the least favorable assumption

*DECLARATION OF ALLEN LEFTWICH*

- 5 -

for King Mountain, then King Mountain would owe an additional $11,054,883.84 (219,648,000 x $0.0533) in Federal excise taxes.

16.     Based on this analysis, TAD recommended that TTB's National Revenue Center assess the additional tax due for May and June 2010, in accordance with the assumption most favorable to King Mountain, as outlined in paragraph 14 above.

17.     In the course of preparing an early draft of this declaration earlier this year, I noticed that the liability assessed for May and June 2010 in the Corrected Notice & Demand of Taxes Due/Notice of Intent to Levy dated June 11, 2013 ("Corrected Notice") did not match the totals above. Our review had analyzed the entire months of May and June 2010, but the Corrected Notice only offset King Mountain's payments for the second half of each month against the additional liability. Thus the liability assessed in the Corrected Notice was an amount between the most favorable assumption in paragraph 14 and the least favorable assumption in paragraph 15. Based on my review, the NRC prepared a Second Corrected Notice that reduced the additional liability for those periods in accordance with TAD's original recommendation.

*DECLARATION OF ALLEN LEFTWICH*

- 7 -

1  In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that
2  the foregoing is true and correct.
3
4  Executed on February 24, 2014.
5
6  _____
7  Allen Leftwich

*DECLARATION OF ALLEN LEFTWICH*

- 7 -