UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>     v.<br><br>KING MOUNTAIN TOBACCO COMPANY, INC.,<br><br>                    Defendant. | NO:  2:12-CV-3089-RMP<br><br>ORDER GRANTING UNITED STATES' RENEWED MOTION FOR SUMMARY JUDGMENT |

Before the Court is the United States' "Renewed Motion for Summary Judgment (Issue No. 1)," ECF No. 70.  The motion was heard with oral argument in Yakima, Washington.  W. Carl Hankla appeared on behalf of the Plaintiff, the United States.  John Adams Moore, Jr., and Randolph H. Barnhouse appeared on behalf of the Defendant, King Mountain Tobacco Co.  The Court has considered the briefing, the supporting documentation and the file, and is fully informed.

BACKGROUND

In its motion, the United States renews one of the issues presented in its original Motion for Summary Judgment:  whether the Blue Ribbon Transcript

ORDER GRANTING UNITED STATES' RENEWED MOTION FOR SUMMARY JUDGMENT ~ 1

1  establishes the presumptive sum for tax assessments against King Mountain which
2  should be reduced to judgment.  ECF No. 48 at 5-6.  In response to the United
3  States' original motion for summary judgment, King Mountain submitted an
4  unopposed request to take additional discovery under Federal Rule of Civil
5  Procedure 56(d) before responding to the particular issue of assessments owed.
6  ECF No. 52.  The Court granted King Mountain's request and provided additional
7  time for discovery as to that issue.  ECF No. 53.

8      The Court later granted the United States' Motion for Summary Judgment as
9  to all substantive defenses presented by King Mountain and determined that King
10 Mountain is liable for federal tobacco excise taxes owed.  ECF No. 62.  The Court
11 left open the precise amount of taxes owed per its prior Order granting King
12 Mountain additional time on that issue.  *Id.*

13                                       DISCUSSION

14     Summary judgment is appropriate where the moving party establishes that
15 there are no genuine issues of material fact and that the movant is entitled to
16 judgment as a matter of law.  Fed. R. Civ. P. 56(a).  If the moving party
17 demonstrates the absence of a genuine issue of material fact, the burden then shifts
18 to the non-moving party to set out specific facts showing a genuine issue for trial.
19 *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986).
20

Evidence that may be relied upon at the summary judgment stage includes "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, [and] interrogatory answers . . . ." Fed. R. Civ. P. 56(c)(1)(A). In evaluating a motion for summary judgment, the Court must draw all reasonable inferences in favor of the nonmoving party. *Dzung Chu v. Oracle Corp. (In re Oracle Corp. Secs. Litig.)*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

The United States asserts that the Blue Ribbon Transcript it has produced in support of its motion establishes a prima facie case for reducing to judgment the tax assessments against King Mountain as a matter of law. King Mountain argues that the Blue Ribbon Transcript is not entitled to a presumption of correctness and that a genuine issue of material fact remains as to the precise amounts owed. In addition, King Mountain raises several defenses to certain amounts claimed, including: whether the United States should be equitably estopped from collecting excise taxes on cigarettes that King Mountain shipped to a cigarette distributor that was operating under an agreement with the United States to deprive King Mountain of payment; whether King Mountain is entitled to an advice-of-counsel defense for penalties assessed against King Mountain for failure to pay excise taxes; and whether King Mountain is exempt from paying excise taxes because the

ORDER GRANTING UNITED STATES' RENEWED MOTION FOR
SUMMARY JUDGMENT ~ 3

failure to pay such taxes could result in forfeiture of allotment land.  Each of these issues is examined in turn.

### A. The Blue Ribbon Transcript

The United States has introduced into the record a certified, official "Transaction History Report," a "Corrected Final Notice & Demand of Taxes Due / Notice of Intent to Levy," and a "Second Corrected Final Notice & Demand of Taxes Due / Notice of Intent to Levy," collectively referred to as the "Blue Ribbon Transcript."  ECF No. 49-1; ECF No. 82-2.  The Second Corrected Final Notice purported to "correct the liability assessed for May and June 2010" and account for "a recently discovered late payment that occurred in April, 2011."  ECF No. 82-2.  According to the Second Corrected Final Notice, King Mountain owed the United States $57,914,811.27 for back taxes, penalties and interest, as of February 25, 2014.  ECF No. 82-2.

The United States contends that the Blue Ribbon Transcript is admissible under the Federal Rules of Evidence as a self-authenticating official record of the United States.  The United States analogizes the Blue Ribbon Transcript to the substantially equivalent IRS Form 4340 Certificate of Assessments and Payments, which is a self-authenticating record that fits within the public records exception for the hearsay rule and which constitutes "presumptive proof of a valid

1   assessment." *See Rossi v. United States*, 755 F. Supp. 314, , 316-18 (D. Or. 1990)

2   (citing *United States v. Chila*, 871 F.2d 1015, 1018 (11th Cir. 1989)).

3       King Mountain does not dispute the Government's analogy to IRS Form

4   4340 or the basis of admissibility of the Blue Ribbon Transcript.  Instead, King

5   Mountain contends that it has produced admissible evidence countering the

6   presumed validity of the Blue Ribbon Transcript.  *See Chila*, 871 F.2d at 1018.  To

7   illustrate the inaccuracy of the Blue Ribbon Transcript, King Mountain points to 1)

8   the Second Corrected Final Notice that the Government issued after its original

9   motion for summary judgment was filed in this case, and 2) a payment to be

10  received by the TTB from funds forfeited in a related action that is not accounted

11  for in the Blue Ribbon Transcript.

12      The United States has submitted all computations supporting its calculation

13  of the amounts owed in the Blue Ribbon Transcript and the Second Corrected Final

14  Notice.  ECF No. 49-1; ECF No. 81-1 at 16-19; ECF No. 82-2.  In addition, the

15  United States provided the declaration of Tonya Geis, Section Chief of the

16  Delinquent Tax Group at the National Revenue Center of the TTB, explaining the

17  computations and authority for the amounts claimed.  ECF No. 82.  King Mountain

18  has not disputed the accuracy of Ms. Geis' conclusions, the authorities cited, or the

19  accuracy of the computations in the Blue Ribbon Transcript, including the Second

20  Corrected Final Notice.  Therefore, the Court finds that the issuance of a Second

ORDER GRANTING UNITED STATES' RENEWED MOTION FOR
SUMMARY JUDGMENT ~ 5

1  Corrected Final Notice does not undermine the presumption of validity attached to

2  the Blue Ribbon Transcript.

3  However, the fact that the Blue Ribbon Transcript and computations do not

4  account for a payment to be received from funds forfeited in a related action

5  presents a greater concern.  As the United States explains, the Alcohol and

6  Tobacco Tax and Trade Bureau ("TTB") will be receive between $5,000,000 and

7  $8,995,259 in forfeited funds to which King Mountain had previously asserted a

8  claim.  *Id.*  The forfeited funds are currently held by the Criminal Division of the

9  United States Department of Justice.  ECF No. 81.

10  TTB had not yet received this payment as of the time this motion was heard.

11  The United States concedes that it is appropriate for TTB to credit the forfeiture

12  amount to the judgment in this case after TTB receives the funds from the Criminal

13  Division.  ECF No. 80 at 3.  However, the United States has offered no explanation

14  of the manner in which the funds will be credited to the judgment, specifically

15  whether the funds will be applied first to the underlying assessments, which could

16  reduce subsequent penalties and interest, or whether the funds will be applied first

17  to the penalties and interest, which could increase King Mountain's overall

18  liability.  The United States' position at oral argument was that TTB would apply

19  the funds in whatever way that it deemed proper and generally in whatever way

20  was most beneficial to the Government.

ORDER GRANTING UNITED STATES' RENEWED MOTION FOR
SUMMARY JUDGMENT ~ 6

The Court concludes that the existence of the forfeited funds does not render the Blue Ribbon Transcript inaccurate. The assessments claimed in this case, as reflected by the Blue Ribbon Transcript, are not impacted by an expected credit against the judgment stemming from funds seized in a separate civil forfeiture action. However, the Court is concerned that the United States has provided no guidance to the Court, and apparently has provided no guidance to King Mountain, as to the manner in which it will credit the forfeited funds to the judgment obtained through this action. The United States is thus directed, as a matter of due process, to provide a full accounting to King Mountain of how the forfeited funds are applied to the judgment once the judgment is entered and the funds have been received by the TTB, and is further directed to provide King Mountain with any statutory, regulatory, or other authority upon which the United States relies in applying the forfeited funds.

In conclusion, the Court finds that the Blue Ribbon Transcript constitutes presumptive proof of a valid assessment in this case.

**B.  Equitable estoppel**

King Mountain asserts that the United States should be equitably estopped from collecting excise taxes on certain cigarettes that King Mountain shipped to a distributor of tobacco products, FB Enterprises LLC.

1  King Mountain explains that it had entered into a relationship with Fred
2  Brackett and FB Enterprises, LLC, in 2010, in which: King Mountain would ship
3  a total of approximately $20,000,000 worth of cigarettes to FB Enterprises; FB
4  Enterprises would then resell the cigarettes in its South Carolina and North
5  Carolina markets; and FB Enterprises and King Mountain would share the resale
6  profit. Because the profits were shared, King Mountain allowed FB Enterprises to
7  pay for the cigarettes as they were sold. ECF No. 75-4.
8  Unbeknownst to King Mountain, Fred Brackett and FB Enterprises entered
9  into an agreement with the United States in late 2010 or early 2011 in which FB
10 Enterprises would sell the cigarettes that it received from King Mountain and the
11 United States would seize the funds before FB Enterprises could pay King
12 Mountain for the cigarettes. The United States directed the sale price of the
13 cigarettes at an amount well below King Mountain's wholesale price, and allowed
14 FB Enterprises to retain a profit from each sale. FB Enterprises agreed to this
15 course of conduct with the United States after FB Enterprises had made several
16 large payments to King Mountain as contemplated by the agreement between King
17 Mountain and FB Enterprises. ECF Nos. 75-4, 75-5, 75-6, 75-7. King Mountain
18 claims that it lost over $10,000,000 in immediate cash flow through FB
19 Enterprises' failure to make payments once the United States had intervened. ECF
20 No. 75-7 at 2.

ORDER GRANTING UNITED STATES' RENEWED MOTION FOR
SUMMARY JUDGMENT ~ 8

As a result of this scheme, King Mountain alleges that it was deprived of income that it expected on the sale of cigarettes to FB Enterprises and was effectively prevented from selling its cigarettes in the same markets as FB Enterprises because its wholesale price had been severely undercut. ECF No. 75-7. The United States has stated in separate court proceedings that King Mountain was "a thorn in the side of . . . the tobacco industry" and that its scheme with FB Enterprises "brought the King Mountain people pretty much to their knees." ECF No. 75-5 at 2-3.

King Mountain's argument is that these actions by the United States deprived it of substantial cash flow, which then prevented King Mountain from paying excise taxes on the cigarettes that they manufactured. The United States asserts that King Mountain cannot meet its high burden of establishing equitable estoppel against the government.[1]

To establish a claim for equitable estoppel, a party must ordinarily demonstrate "(1) knowledge of the true facts by the party to be estopped, (2) intent to induce reliance or actions giving rise to a belief in that intent, (3) ignorance of the true facts by the relying party, and (4) detrimental reliance." *E.g.*, *Estate of*

---

[1] The United States additionally contends that King Mountain's assertion of estoppel is untimely because King Mountain did not raise this defense in its Answer, as required by Federal Rule of Civil Procedure 8(c)(1). Because the Court ultimately finds that King Mountain cannot prevail on a defense of equitable estoppel, it need not address the United States' argument as to procedural default.

ORDER GRANTING UNITED STATES' RENEWED MOTION FOR SUMMARY JUDGMENT ~ 9

*Amaro v. City of Oakland*, 653 F.3d 808, 813 (9th Cir. 2011) (quoting *Bolt v. United States*, 944 F.2d 603, 609 (9th Cir. 1991)). In addition, when estoppel is asserted against the government the following additional elements must also be met: that the government "engaged in affirmative misconduct going beyond mere negligence"; that the government's alleged wrongful acts caused "a serious injustice"; and that the imposition of estoppel will not "undu[ly] damage" the public interest. *Baccei v. United States*, 632 F.3d 1140, 1147 (9th Cir. 2011) (citing *Morgan v. Heckler*, 779 F.2d 544, 545 (9th Cir. 1985)). "Affirmative misconduct on the part of the government requires an affirmative misrepresentation or affirmative concealment of a material fact, such as a deliberate lie or a pattern of false promises." *Id.* (internal citation omitted).

The Court need not examine each of the elements here because detrimental reliance, which is a necessary element to any equitable estoppel claim, cannot be established by King Mountain. As King Mountain itself acknowledged at oral argument, it was obligated to pay the federal excise taxes at the time that its tobacco products left the bonded area of the manufacturing facility.[2] King Mountain does not dispute that payment of the federal excise taxes was due prior

---

[2] The parties explained that King Mountain had been placed on a "prepayment program" due to King Mountain's particular history in the payment of excise taxes. King Mountain does not dispute that it was subject to this program nor does it dispute the validity of the program.

ORDER GRANTING UNITED STATES' RENEWED MOTION FOR SUMMARY JUDGMENT ~ 10

to, and regardless of, whether King Mountain received payment from FB Enterprises or any other buyer.

While it may be the case, as King Mountain claims, that the United States' scheme eventually starved it of cash flow that it could have used to pay taxes and satisfy other business obligations, the fact remains that the excise taxes should have been paid well in advance of the time that King Mountain failed to receive payment from FB Enterprises. Put another way, King Mountain could not have relied on payment from FB Enterprises to its detriment vis-à-vis payment of the excise taxes, because it was obligated to pay the tobacco excise taxes even before FB Enterprises remitted payment for the cigarettes it purchased.

The Court rejects King Mountain's defense of equitable estoppel to prohibit the collection of excise taxes on certain shipments of cigarettes.

**C. Advice-of-counsel defense**

King Mountain asserts that it is entitled to an advice-of-counsel defense to avoid payment of penalties for failure to pay excise taxes owed. According to King Mountain, it was advised by its counsel that it did not have to pay excise taxes for the manufacturer of tobacco products because it was exempt from such payments under the General Allotment Act and the Yakama Treaty of 1855. The Court ultimately concluded that King Mountain was not exempt from taxation under those provisions. ECF No. 62.

ORDER GRANTING UNITED STATES' RENEWED MOTION FOR SUMMARY JUDGMENT ~ 11

Under the Internal Revenue Code, certain penalties for failure to file, deposit, and/or pay taxes "shall be added" to the taxes owed "unless it is shown that such failure [to file, pay, or deposit] is due to reasonable cause and not due to willful neglect." 26 U.S.C. §§ 6651(a)(1) & (2), and 6656(a). "Reasonable cause" exists where a taxpayer exercises "ordinary business care and prudence" and was nevertheless unable to pay or file taxes. 26 C.F.R. § 301.6651-1(c)(1).

A taxpayer's reliance on an accountant's or attorney's erroneous advice that no taxes are owed may constitute "reasonable cause." *See, e.g.*, *Knappe v. United States*, 713 F.3d 1164, 1170 (9th Cir. 2013). The United States Supreme Court has explained the rationale for this rule as follows:

> When an accountant or attorney advises a taxpayer on a matter of tax law, such as whether a liability exists, it is reasonable for the taxpayer to rely on that advice. Most taxpayers are not competent to discern error in the substantive advice of an accountant or attorney. To require the taxpayer to challenge the attorney, to seek a "second opinion," or to try to monitor counsel on the provisions of the Code himself would nullify the very purpose of seeking the advice of a presumed expert in the first place. "Ordinary business care and prudence" do not demand such actions.

*United States v. Boyle*, 469 U.S. 241, 250-51 (1985); *see also United States v. Kroll*, 547 F.2d 393, 396 (7th Cir. 1977) ("Whether or not the taxpayer is liable for taxes is a question of tax law which often only an expert can answer. The taxpayer not only can, but must, rely on the advice of either an accountant or a lawyer. This reliance is clearly an exercise of ordinary business care and prudence.").

ORDER GRANTING UNITED STATES' RENEWED MOTION FOR SUMMARY JUDGMENT ~ 12

The United States argues that King Mountain cannot rely on an advice-of-counsel defense because it did not previously raise its defense in its answer or in its initial disclosures. According to the United States, King Mountain has maintained throughout the course of the litigation that it was exempt from federal excise tobacco taxes altogether, and never contended until this point that it might avoid penalties, through an advice-of-counsel defense or otherwise, even if it were liable for the tax.

The United States' position is supported by King Mountain's Answer, which identified several affirmative defenses based on the Yakama Nation Treaty of 1855, the General Allotment Act, and other federal law, but did not identify a defense based on reasonable cause for failure to pay the taxes. ECF No. 6. More importantly, King Mountain's Rule 26 initial disclosures did not include materials related to an advice-of-counsel defense, such as a letter from King Mountain's counsel to officials at the TTB and counsel for the United States that King Mountain now submits as evidence of its reliance on the advice-of-counsel defense. ECF No. 81-1 at 19-24.

Federal Rule of Civil Procedure 8(c)(1) requires a party to "affirmatively state any avoidance or affirmative defense" in its responsive pleading. A party may plead an affirmative defense for the first time in a motion for summary judgment "absent prejudice to the plaintiff." *Ledo Fin. Corp. v. Summers*, 122

ORDER GRANTING UNITED STATES' RENEWED MOTION FOR SUMMARY JUDGMENT ~ 13

F.3d 825, 827 (9th Cir. 1997). Rule 26(a)(1)(A) requires the disclosure of certain information that the disclosing party "may use to support its claims or defenses." Rule 26(e) imposes a duty to supplement disclosures. Federal Rule of Civil Procedure 37(c)(1) provides for sanctions unless the failure to disclose "was substantially justified or is harmless."

King Mountain has not explained how its failure to plead its advice-of-counsel defense did not prejudice the United States, nor has it explained how its failure to provide Rule 26 disclosures to the United States was substantially justified or harmless. Moreover, the Court agrees with the United States' contention that it was prejudiced by the failure to plead and disclose the alleged defense, because the United States was never given an opportunity to conduct discovery on King Mountain's defense.

In addition, the materials that King Mountain now relies on in support of its advice-of-counsel defense are not persuasive. For example, King Mountain relies on resolutions passed by the Yakama Nation Tribal Council in 2010 and by the National Congress of American Indians in 2011 stating an understanding that King Mountain is exempt from federal tobacco excise taxes under the Yakama Nation Treaty of 1855. ECF Nos. 75-8, 75-11. While perhaps relevant to King Mountain's position in litigation, these materials are not directly relevant to reliance on the advice-of-counsel defense..

ORDER GRANTING UNITED STATES' RENEWED MOTION FOR SUMMARY JUDGMENT ~ 14

Similarly, the materials that King Mountain has introduced from its attorneys do not tend to support King Mountain's assertion that it relied on the advice of counsel in failing to pay the excise taxes. Rather, these materials constitute statements of King Mountain's position in litigation. For example, King Mountain's former counsel wrote a letter to TTB and the United States Department of Justice's Criminal Division, after litigation had commenced in this Court, stating that King Mountain's position is that it was exempt from excise taxes under the Yakama Nation Treaty of 1855 and federal law. ECF No. 75-12. Such litigation posture statements do not establish that King Mountain was advised by its attorney that it could, or should, cease paying excise taxes or even that it was not liable to pay excise taxes.

Even Delbert Wheeler's declaration submitted in opposition to the United States' renewed motion for summary judgment only states "Due to my counsel's expertise in corporate and tax law, I relied on the legal advice and legal justification [sic], and ceased paying [federal excise taxes] in August 2011." ECF No. 75-3 at 3. Yet the uncontroverted evidence in this case shows that King Mountain began accruing tax liabilities for failure to pay the tobacco excise tax in 2009 and continuing through 2010. ECF No. 49-1. That King Mountain failed to pay excise taxes in 2009, long before its asserted reliance on the advice-of-counsel in 2011, would demonstrate wilfullness rather than reasonable cause. On the

ORDER GRANTING UNITED STATES' RENEWED MOTION FOR SUMMARY JUDGMENT ~ 15

whole, the evidence introduced by King Mountain only supports its position in litigation that it concluded that it was exempt from federal excise taxes, not that King Mountain received legal advice on which it relied that it could, or should, cease paying the tax altogether.

The Court concludes that King Mountain may not now assert an advice-of-counsel defense to avoid penalties for failure to pay the tobacco excise taxes.

### D. Potential forfeiture of allotment land

King Mountain contends that it cannot be penalized for its failure to pay tobacco excise taxes because 26 U.S.C. § 5763(c) allows for the forfeiture of the building where the tobacco products were manufactured "and the lot or tract of ground on which the building is located." King Mountain contends that the application of this provision to allotment land would violate the Yakama Treaty of 1855 and the General Allotment Act.

In response, the United States contends that King Mountain has misread Section 5763(c) as allowing the potential forfeiture of Delbert Wheeler's allotment land. Section 5763(c), titled "Real and personal property of illicit operators," reads:

> All tobacco products, cigarette papers and tubes, machinery, fixtures, equipment, and other materials and personal property on the premises *of any person engaged in business as a manufacturer or importer of tobacco products* or cigarette papers and tubes, or export warehouse proprietor, *without filing the bond or obtaining the permit*, as required by this chapter, together with all his right, title, and interest in the

ORDER GRANTING UNITED STATES' RENEWED MOTION FOR SUMMARY JUDGMENT ~ 16

> building in which such business is conducted, and the lot or tract of ground on which the building is located, shall be forfeited to the United States.

The United States correctly points out that Section 5763(c) applies on its face only to "illicit" manufacturers or importers of tobacco products, that is, persons who manufacture or import tobacco products without filing the necessary bond or obtaining the required permit.

King Mountain obtained the required permit from the TTB to manufacture cigarettes at its facilities and posted a surety bond approved by TTB before commencing business. ECF No. 75-3 at 2; ECF No. 83 at 2-3. Therefore, King Mountain's failure to pay the excise taxes does not subject it to forfeiture under Section 5763(c), which would apply only if King Mountain were to manufacture cigarettes without maintaining its permit or bond. This asserted defense is thus irrelevant to the instant case.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

ORDER GRANTING UNITED STATES' RENEWED MOTION FOR SUMMARY JUDGMENT ~ 17

Accordingly, **IT IS HEREBY ORDERED**:

1. The United States' "Renewed Motion for Summary Judgment (Issue No. 1)," **ECF No. 70**, is **GRANTED consistent with the terms of this Order**.

**IT IS SO ORDERED**.

The District Court Clerk is directed to enter this Order and to provide copies to counsel.

**DATED** this 28th day of August 2014.

           *s/ Rosanna Malouf Peterson*
           ROSANNA MALOUF PETERSON
           Chief United States District Court Judge